**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CARRIE M. WARF, an individual,

       Plaintiff,

                                                      Case No.

v

                                                      Hon.

ERIK K. SHINSEKI, SECRETARY,
U.S. DEPARTMENT OF VETERANS AFFAIRS,

       Defendant.
_____/

TISHKOFF & ASSOCIATES PLLC
By: William G. Tishkoff (P45165)
And: Jennifer L. Brant (P67753)
And: Mary P. Clark (P71173)
Attorneys for Plaintiff
407 North Main Street
Ann Arbor, Michigan 48104
(734) 663-4077
_____/

**COMPLAINT AND JURY DEMAND**

       NOW COMES Plaintiff, Carrie M. Warf, through her attorneys, Tishkoff & Associates PLLC, and for her complaint against Defendant, Erik K. Shinseki, Secretary, U.S. Department of Veteran Affairs, states:

**PARTIES**

       1.     Plaintiff, Carrie M. Warf ("Ms. Warf"), is an individual residing in the City of New Boston, County of Wayne, State of Michigan.

       2.     Defendant, Erik K. Shinseki, Secretary, U.S. Department of Veterans Affairs (the "VA"), is secretary of the VA, a United States of America federal agency, which agency conducts business in the County of Washtenaw, State of Michigan.

1

## JURISDICTION AND VENUE

3. The events giving rise to this complaint took place in Ann Arbor, Michigan.

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and § 706(f) of Title VII, 42 U.S.C. § 2000e-5.

5. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(e).

## NATURE OF CLAIMS

6. This action is a gender discrimination claim for the VA's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), by failing to promote based on gender, creating a sexually hostile work environment based on gender, and retaliation and reprisal for engaging in protected civil rights activity.

7. This action is also a claim for the VA's violation of the Equal Pay Act, 29 U.S.C. § 206(d) (the "Equal Pay Act"), by paying Ms. Warf less than male employees at the VA's Ann Arbor facility (the "Ann Arbor VA") for performing equal work on equivalent jobs.

## ADMINISTRATIVE PROCEEDINGS

8. On or about June 6, 2008, Ms. Warf invoked Equal Employment Opportunity ("EEO") procedures available to her as a federal sector employee and reported her employment discrimination claims to the VA's Office of Resolution Management ("ORM").

9. Following EEO counseling, on August 13, 2008, Ms. Warf filed her first formal complaint ("First EEO Complaint") with ORM against the VA arising out of her employment at the Ann Arbor VA.

10. On March 6, 2009, Ms. Warf timely submitted her hearing request to the EEOC Hearings Unit in connection with her First EEO Complaint.

2

11. Ms. Warf's First EEO Complaint was assigned to EEOC Administrative Judge Mimi M. Gendreau.

12. On or about March 20, 2009, Ms. Warf invoked EEO procedures available to her as a federal sector employee by contacting an EEO counselor and reporting her further employment discrimination claims.

13. Following EEO counseling for the above report, on April 29, 2009, Ms. Warf filed her second formal complaint ("Second EEO Complaint") with ORM against the VA relating to Ms. Warf's further employment discrimination claims.

14. By Acknowledgement And Order served on May 12, 2009, EEOC Administrative Judge Cheryl Kramer assumed the assignment of Ms. Warf's First EEO Complaint.

15. Administrative Judge Kramer, during a telephone conference on June 15, 2009, ruled that Ms. Warf's claims in her First EEO Complaint were administratively consolidated with Ms. Warf's claims in her Second EEO Complaint.

16. More than 180 days have passed from both the date Ms. Warf filed her First EEO Complaint and the date Ms. Warf filed her Second EEO Complaint.

**GENERAL ALLEGATIONS**

17. Ms. Warf has been a federal employee since July 1997.

18. Ms. Warf is, and has been, employed with the Ann Arbor VA since 1999.

19. From her original hire date through her filing of her above First EEO Complaint and her Second EEO Complaint, Ms. Warf's position was Program Assistant in the Mental Health Service, formerly Psychology Service, of the Ann Arbor VA.

20. On or about December 9, 2004, a Specialist from the Human Resources Department ("HR") of the Ann Arbor VA performed a desk audit of Ms. Warf's position.

21. The above desk audit determined that Ms. Warf was performing duties and functions higher than a GS-6.

22. However, Ms. Warf was not promoted to a GS-7, her position description ("PD") was not revised and she did not receive the upgrade that was indicated for her based on the above desk audit.

23. On many occasions, Ms. Warf discussed with her supervisor, Kenneth Adams, that she should be promoted to a higher grade scale and position based on the above desk audit.

24. On many occasions, Ms. Warf met with HR representatives, which HR representatives agreed that she should be promoted to a higher grade scale and position based on the above desk audit.

25. Ms. Warf referenced the above desk audit, and the work she was performing under Mr. Adams, in multiple requests Ms. Warf made to Mr. Adams, her supervisor and then Chief of Psychology Service, for promotion and accurate reflection of the duties she was performing and not being compensated for.

26. On April 11, 2005, at the instruction of Mr. Adams, Ms. Warf revised her PD for promotion and classification as a separate PD with a higher level of authority and provided it to Mr. Adams for submission to the Position Management Committee; however, Ms. Warf later learned that, contrary to his representations to Ms. Warf, Mr. Adams did not submit Ms. Warf's revised PD to the Position Management Committee.

27. On January 4, 2007, Ms. Warf inquired with Mr. Adams regarding her promotion and grade scale upgrade requests.

28. Mr. Adams responded on the same day, stating that he was working on Ms. Warf's above requests.

29. In May 2007, Ms. Warf met Michael Knutson, Human Resources Classification Specialist, who informed Ms. Warf that her promotion and service grade requests should have been granted.

30. In December 2007/January 2008, Mr. Adams provided Ms. Warf with an initial Education Program Specialist PD that he represented he created for Ms. Warf and asked Ms. Warf to review to make sure he included all of the duties she performed for trainees and students as the Internship Program Manager.

31. Mr. Adams instructed Ms. Warf to edit the above Education Program Specialist PD and add any of her current duties that he neglected to include, was not aware of, required specific knowledge and abilities to perform, or that she deemed central to the role of working with trainees and program operation.

32. In January 2008, Mr. Adams stated to Ms. Warf that the job that she was currently performing entailed the function of the new education program specialist position, which position, with accompanying higher grade scale, Mr. Adams indicated to Ms. Warf she would receive.

33. In April 2008, Mr. Adams repeatedly indicated to Ms. Warf that the new education program specialist position, the functions of which position Ms. Warf was already performing, would include a PD and grade scale that Ms. Warf would receive with her promotion.

34. On April 24, 2008, Mr. Adams advised Ms. Warf that there was no one more qualified for the new education program specialist position than Ms. Warf.

35.     From December 2004 through 2008, Ms. Warf made multiple requests to Mr. Adams for promotion and for her PD to be upgraded to accurately reflect the duties she was performing.

36.     Beginning in December 2004 and continuing through the present, based on her gender, Ms. Warf was denied promotion and upgrade from GS-6 to a grade scale and position commensurate with her duties and functions, and commensurate with her abilities.

37.     On June 6, 2008, Ms. Warf exercised her civil rights through EEO and reported her employment discrimination claims to ORM.

38.     Subsequently, in July 2008, the VA internally posted the majority and substance of Ms. Warf's duties and responsibilities under the new job description of Education Program Specialist, GS-9/11.

39.     The Ann Arbor VA did not inform Ms. Warf of the above internal posting and Ms. Warf could not apply for this internal posting for the GS-9/11 level Education Program Specialist position because Ms. Warf was a GS-6, an improper grade scale level, particularly where Ms. Warf had been performing the duties and responsibilities of the posted Education Program Specialist position for years at an "Outstanding" level, as confirmed by her performance reviews.

40.     The VA subsequently closed its above internal posting of the Education Program Specialist position and posted the position internally and externally, federal employees only.

41.     If Ms. Warf had not been denied her promotion and grade scale status as at least a GS-7, she would have been entitled to apply for the Education Program Specialist position while it was only posted internally, she was clearly the most qualified of the internal candidates and she should have been selected for this position.

42. However, as a GS-6, Ms. Warf was precluded from applying for a position posted more than 2 grade scales higher and she could only apply for the Education Program Specialist position after the VA closed its above internal positing, which Ms. Warf did on August 8, 2008.

43. On October 28, 2008, Ms. Warf met with the HR Acting Chief who stated that the VA elevated Ms. Warf to a GS-7 level after the internal posting of the subject Education Program Specialist position closed, that the VA was extending through November 7, 2008 the posting of the Education Program Specialist position to all applicants nationwide, including non-federal applicants, and that Ms. Warf had to re-apply for the Education Program Specialist position while it was posted nationwide to internal and external applicants.

44. On or about November 7, 2008, Ms. Warf re-applied for the subject Education Program Specialist position while it was posted to all applicants nationwide, including non-federal applicants.

45. Ms. Warf was never interviewed for the subject Education Program Specialist position.

46. On or about March 6, 2009, Ms. Warf learned that the VA did not select her for the subject Education Program Specialist position, GS-9/11, and instead selected an external male applicant, Timothy Delong.

47. Similarly situated males in the Mental Health Service, former Psychology Service, of the Ann Arbor, VA were not denied timely promotions and performed equal work on equivalent jobs to Ms. Warf but with higher pay and with higher grade scales.

48. In retaliation for Ms. Warf's EEO activity and civil rights claims, and in discriminatory and disparate treatment of Ms. Warf based on her gender, the VA selected Tim Delong for the Education Program Specialist position and precluded Ms. Warf from obtaining,

and denied her the opportunity to apply for, the Education Program Specialist position when it was originally posted, internally only.

49. From August 2007 through the present, male managers and supervisors in Mental Health Service, formerly Psychology Service, of the Ann Arbor VA, particularly Mr. Adams, Henry Buchtel, Israel Liberzon, MD, Eric Young, MD and Lawrence Perlman, and Christa Stoiber, acting at the direction of such men, created for, and directed at, Ms. Warf an extremely hostile work environment based on gender, which hostile work environment was not directed at, or created for, similarly situated males in the Mental Health Service.

50. The above sexually hostile work environment included Mr. Adams and Mr. Buchtel improperly disclosing Ms. Warf's personal medical condition to her co-workers on March 7, 2006, June 15, 2007, August 16, 2007 and September 11, 2008.

51. The above sexually hostile work environment included:

    A. On August 3, 2007, Mr. Adams hosted a party at his home in honor of Ann Arbor VA psychology interns.

    B. Due to illness, Ms. Warf was unable to attend the above subject intern party.

    C. Mr. Adams was informed that Ms. Warf would not be able to attend the party at his home due to her illness.

    D. Notwithstanding being informed regarding Ms. Warf's absence and the reason for the same, Mr. Adams called Ms. Warf on her personal cell phone and left a voicemail at 7:00 pm on August 3, 2007, stating that he was wondering where Ms. Warf was and if she was planning on attending the party at his home.

  E. Mr. Adams called Ms. Warf on her personal cell phone again at approximately 10:30 p.m. on August 3, 2007, talked to Ms. Warf, sounding intoxicated and repeatedly asking Ms. Warf why she was not at the party.

  F. Ms. Warf explained to Mr. Adams in the above telephone conversation that she had pleurisy, was not feeling well and had already passed on this information for Mr. Adams.

  G. In the above telephone conversation, Mr. Adams was combative, intimidating and harassing, Mr. Adams made Ms. Warf extremely uncomfortable and Mr. Adams inappropriately hounded Ms. Warf for information Mr. Adams already had regarding Ms. Warf's absence from an optional event.

52. On August 21, 2007, Mr. Adams stated to Ms. Warf, in connection with Ms. Warf's return from an approved medical leave, that others in the Ann Arbor VA Psychology Service would be understandably angry with Ms. Warf for taking a medical leave to have surgery and recovery.

53. In April 2008, Ann Arbor VA Psychology Intern Laura Pierce reported to Ms. Warf that Ms. Pierce was experiencing sexually harassment and a sexually hostile work environment directed at Ms. Pierce by Mr. Perlman, Ms. Pierce's immediate supervisor, under the general supervision of Mr. Adams.

54. On April 29, 2008, Mr. Adams entered Ms. Warf's office, visibly hostile and upset, and screamed at Ms. Warf for receiving Ms. Pierce's sex harassment complaints and threatening Ms. Warf that she should not report Ms. Pierce's complaint regarding the sexual harassment by Mr. Perlman.

55. Another female co-worker of Ms. Warf in the Ann Arbor VA Mental Health Service also reported to Ms. Warf her complaints of sex harassment and sexually hostile work environment directed at Ms. Warf's co-worker by Mr. Perlman.

56. Ms. Warf and multiple female co-workers of Ms. Warf in the Ann Arbor VA Mental Health Service were sexually harassed and/or subjected to a sexually hostile work environment from 2004 through the present, with reports and complaints by these women to Ann Arbor VA management and without timely and proper investigation and corrective response by Ann Arbor VA management.

57. In a meeting that Ms. Warf attended with VA attorney Thomas Maher, in connection with the complaints of Ms. Warf and another female co-worker regarding gender discrimination and the sexually hostile work environment in the Ann Arbor VA Mental Health Service, Mr. Maher stated to Ms. Warf and her co-worker that:

   A. He apologized to Ms. Warf, on behalf of all men, for the gender discrimination and sexually hostile work environment in the Ann Arbor VA Mental Health Service;

   B. What he learned about Ms. Warf's case bothered him and caused him to have difficulty sleeping;

   C. "Mr. Adams had a crush on Carrie and recent events were like a break up;"

   D. Mr. Adams did not want Ms. Warf to advance in her career at the VA; and

   D. He felt there had been "serious wrong-doing" and Ms. Warf should be detailed for her safety until the matter was addressed.

10

58. Ms. Warf's above reports and claims were known to her supervisors and the managers in the Ann Arbor VA's Mental Health Service, as well as to the Ann Arbor VA Director, Lou Ann Atkins, whom Ms. Warf met with on September 2, 2008 and reported to personally regarding her claims.

59. In discriminating against Ms. Warf for her status as a woman and in retaliation for Ms. Warf's reports and claims in her First Complaint, the VA subjected Ms. Warf to an extremely hostile work environment and removed all of Ms. Warf's duties and responsibilities as Program Assistant.

60. On April 17, 2009, the VA proceeded to disconnect Ms. Warf's VA work phone number, removed substantive work assignments from Ms. Warf and notified Ms. Warf that she would be physically transferred from her long-time work location within the Ann Arbor VA to a hall where several of the most egregious male perpetrators of the subject hostile work environment, whom Ms. Warf identified in her First and Second EEO Complaint, were located.

## COUNT I

## GENDER DISCRIMINATION/FAILURE TO PROMOTE

61. Ms. Warf incorporates the above allegations as if fully stated herein.

62. Ms. Warf's sex was a factor that made a difference in the VA's failure to promote Ms. Warf and in the VA's decision to subject her to the wrongful and discriminatory treatment described above.

63. The VA, by its agents, representatives and employees, was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

64. The VA's actions were intentional, with reckless indifference to Ms. Warf's rights and sensibilities.

65. If Ms. Warf had been a male, she would not have been treated in the manner described above.

66. As a direct and proximate result of the VA's wrongful acts and omissions, Ms. Warf has sustained loss of earnings, earning capacity, and fringe benefits, loss of leave and has suffered mental anguish, loss of sense of safety, severe physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

67. The treatment described above violated § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and continue to violate the statute.

## COUNT II

## HOSTILE WORK ENVIRONMENT

68. Ms. Warf incorporates the above allegations as if fully stated herein.

69. Ms. Warf's sex was a factor that made a difference in the VA's decision to subject her to the wrongful and discriminatory treatment described above.

70. The VA, by its agents, representatives and employees, was predisposed to discriminate on the basis of sex, acted in accordance with that predisposition and created a hostile work environment for Ms. Warf based on her sex.

71. The VA's actions were intentional, with reckless indifference to Ms. Warf's rights and sensibilities.

72. If Ms. Warf had been a male, she would not have been treated in the manner described above.

73. The subject hostile work environment substantially interfered with Ms. Warf's ability to perform her job.

74. The subject hostile work environment was reported to and known by the Ann Arbor VA management, which management failed to investigate and correct such hostile work environment.

75. As a direct and proximate result of the VA's wrongful acts and omissions, Ms. Warf has sustained loss of earnings, earning capacity, and fringe benefits, loss of leave and has suffered mental anguish, loss of sense of safety, severe physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

76. The treatment described above violated § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and continue to violate the statute.

## COUNT III

## RETALIATION

77. Ms. Warf incorporates the above allegations as if fully stated herein.

78. The VA retaliated against Ms. Warf for exercising her civil rights and complaining about the VA's discriminatory employment practices described above, in violation of Title VII.

79. The VA's actions were intentional, with reckless indifference to Ms. Warf's rights and sensibilities.

80. As a direct and proximate result of the VA's wrongful acts and omissions, Ms. Warf has sustained loss of earnings, earning capacity, and fringe benefits, loss of leave and has suffered mental anguish, loss of sense of safety, severe physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

81. The treatment described above violated § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and continue to violate the statute

## COUNT IV

## VIOLATION OF THE EQUAL PAY ACT

82. Ms. Warf incorporates the above allegations as if fully stated herein.

83. Ms. Warf was, and is, paid less than male employees at the Ann Arbor VA for performing equal work on equivalent jobs.

84. Ms. Warf performed substantially equal work on jobs requiring equal skill, effort and responsibility as her male counterparts who the VA paid more.

85. Ms. Warf performed her job under similar working conditions as her male counterparts who the VA paid more.

86. The above practice violated, and continues to violate, the Equal Pay Act, 29 U.S.C. § 206(d).

WHEREFORE, Ms. Warf respectfully requests the entry of a judgment in favor of Ms. Warf and against the VA providing the following relief:

A. Awarding Ms. Warf compensatory damages, including damages for emotional distress;

B. Awarding Ms. Warf back pay and lost wages, benefits, annual leave, sick leave and compensation time, past and future, with interest;

C. Awarding Ms. Warf interest, attorney fees and costs;

D. Declaring that the VA discriminated against Ms. Warf in the terms and conditions of her employment because of her sex, and entering a systematic decree ending the VA's discriminatory practices and establishing a reporting, recordkeeping, and monitoring system to ensure that they not recur;

  E. Entering an injunction and order reinstating Ms. Warf to the position with the VA she would have held if there was no discrimination and retaliation by the VA, and reassigning Ms. Warf to a position with the VA which is aligned with Ms. Warf's skill set, education and appropriate career path, with proper grade-scale level;

  F. Awarding such other relief as equitable or as permitted by statute, rule or other law.

        Respectfully submitted,

        Tishkoff & Associates PLLC


        <u>/s/ William G. Tishkoff</u>
        By: William G. Tishkoff (P45165)
        And: Jennifer L. Brant (P67753)
        And: Mary P. Clark (P71173)
        Attorneys for Plaintiff
        407 North Main Street
        Ann Arbor, Michigan 48104-1127
        (734) 663-4077
        November 9, 2009

## **JURY DEMAND**

NOW COMES Plaintiff, Carrie M. Warf, through her attorneys, Tishkoff & Associates PLLC, and hereby demands a trial by jury of all triable issues in the above-captioned matter.

        Respectfully submitted,

        Tishkoff & Associates PLLC

        /s/ Jennifer L. Brant
        By: William G. Tishkoff (P45165)
        And: Jennifer L. Brant (P67753)
        And: Mary P. Clark (P71173)
        Attorneys for Plaintiff
        407 North Main Street
        Ann Arbor, Michigan 48104-1127
        (734) 663-4077
        November 9, 2009