UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE M. WARF,	Case No. 09-14402

        Plaintiff,

v.	HON. AVERN COHN

UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS,

        Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 30)**

I.     Introduction

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (Title VII) and the Equal Pay Act, 29 U.S.C. §206(d)(1). Plaintiff Carrie Warf (Warf), an employee of Veterans Affairs Ann Arbor Healthcare System (Hospital), is suing Erik K. Shinseki, in his capacity as Secretary for Veterans Affairs (VA) claiming gender discrimination and retaliation when she did not receive a promotion, sexual harassment, and violation of the Equal Pay Act. The complaint is in four counts: (I) Gender Discrimination; (II) Hostile Work Environment; (III) Retaliation; and (IV) Violation of the Equal Pay Act.

As relief,[1] Warf asks the Court to order her promotion to the grade of GS-9 and award back pay. Now before the Court is VA's motion for summary judgment. For the reasons that follow, the motion is **GRANTED**.

---

[1] Warf also asks the Court for a declaration that the "VA discriminated against Ms. Warf in the terms and condition of her employment because of her sex, and entering a systematic decree ending the VA's discriminatory practices and establishing a reporting,

II.   Background[2]

A.  Promotion to GS-7

Warf began working for VA in 1999. She started as an administrative assistant in the Hospital Psychology Service with a grade of GS-6. As an administrative assistant, she worked for Dr. Kenneth Adams (Adams), Chief of the Psychology Service and as the Coordinator of the Psychology Internship Program. In 2008, the Psychiatry and Psychology Departments at the Hospital merged to form the Mental Health Department. During her tenure with the Psychology Service Warf earned an Associate's degree from Washtenaw Community College. In late 2008 she earned a Bachelor's degree from Eastern Michigan University.

In November 2003, an evaluation performed by VA Human Resources (HR) determined that Warf was performing duties outside of the scope of her job description, including coordinating the internship program. Warf requested a promotion to a grade of GS-7 to reflect her increased responsibility. Adams supported this request and over the next several years made recommendations encouraging a promotion for Warf. The chief of HR declined the request. He indicated that other administrative assistants in far larger sections had a grade of GS-6 and in general, this was the appropriate grade for a "primary support position." It is Warf's contention she was not promoted because she was a woman. Having unsuccessfully sought to have her position reclassified as a GS-7 level, Warf applied for other positions within the Hospital.

---

recordkeeping, and monitoring system to ensure that they do not recur." This is not the form of relief the Court can grant in this case, should Warf be successful.

[2] The background is taken from the Joint Submission (Joint Statement of Material Facts Not in Dispute (Doc. 38)).

2

On October 28, 2008, VA granted Warf a retroactive promotion to a GS-7 grade for the period between April 2005 and October 2008 based on her performance of duties that exceeded her job description.

### B. Promotion to Educational Program Specialist

#### 1. Application for the Position

In 2008, Adams proposed a new position in the Mental Health Department titled Education Program Specialist (EPS). It is Warf's contention that Adams created the position for her because she was already performing many of its responsibilities. The EPS position came with a grade of GS-9/11 and a higher salary. The position required performance of tasks and duties for the Psychiatry Residency Education Program, Psychology Professional Internship Program, Medical Student Education Program, Social Work Training Program, and management of faculty and staff requests for academic and educational activities. The EPS position was open to application from both internal and external candidates. Internal candidates, who receive some hiring preference, can only apply for positions within two GS-grades of their current rank. The new position listed as a GS-9/11 so Warf had to apply for the position as an external candidate.

#### 2. Selection Criteria

The selection committee for the EPS position consisted of four women and two men. It considered Warf for the position but did not select her for an interview. The selection committee chose to interview four candidates, three men and one woman. All four of these candidates had a master's degree. Out of the four, the committee narrowed the field to two leading candidates- one male and one female. Ultimately, the

Hospital hired an outside candidate for the position, Timothy Delong (Delong). Delong is a veteran, has a master's degree in education, and previously taught education courses at the university level. The Hospital hired Delong in March of 2009.

The committee members explained that Warf was not selected for an interview because she did not have the necessary educational and professional credentials. At the time, Warf possessed an associate's degree. The committee explained that a master's degree was ideal, as the function of the position was to organize post-graduate continuing education. The committee eliminated several male applicants who did not have a master's degree. Further, the committee noted that the position needed someone familiar with national accreditation criteria, statistical validation of tests, observation and instructional methods, and knowledge of education policy.

### 3. Retaliation

Warf says she was the most qualified candidate because she already performed the duties of the new position and had done so for several years with excellent performance reviews. Warf contends that the failure to award her the EPS position was retaliation for filing EEO complaints. Warf filed her first EEO complaint on June 6, 2008 and her second on August 13, 2008. The EEO complaints alleged sexual harassment, denial of promotion, and discrimination based on sex and disability.

### C. Equal Pay Act Violation

The denial of the EPS position also forms the basis of Warf's Equal Pay Act violation claim. Warf says that because Delong's position had the same responsibilities and duties she once performed that the two did the same work for different pay: this, she says, was a violation of the Equal Pay Act.

D. Sexual Harassment

Warf asserts that the male leadership at the Hospital created a hostile working environment by engaging in sexual harassment. To support this contention, Warf cites to various specific incidents:

1. Adams called Warf's cell phone twice to inquire why she was not at an optional graduation party for the psychology interns (August 3, 2007);

2. Adams chastised Warf for discussing a sexual harassment complaint with an intern (April 2008);

3. Warf's duties as program assistant and educational liaison were removed and she was relocated to a new part of the building (April 17, 2009);

4. Buchtel disclosed personal medical information related to a surgery and medical leave (May 2007);

5. Adams instructed Warf to tell a suspended employee to leave the building (2008);

6. Pearlman, a co-worker, told Warf in 2003 or 2004 that she "should not have a problem getting married;"

7. Bieliauskas, a co-worker, showed Warf an "off color joke;" (July 2008); and

8. Adams blocked the entryway of the copy room as Warf tried to exit. (March 30, 2009).

With respect to the disclosure of medical information, VA says Warf applied to be part of a leave donation program in expectation of an extended absence following a medical procedure. Both Adams and Buchtel donated leave to Warf and encouraged other Mental Health staff to do the same. It is unclear what, if any, protected information Buchtel disclosed, Warf does not specify.

III.   VA's Motion for Summary Judgment

VA asks the Court for summary judgment on the grounds that there are no material facts in dispute and it is entitled to summary judgment as a matter of law because Warf has not proffered evidence that would create a genuine issue of material fact for trial.

IV. Legal Standard; Motion for Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

V. Discussion

A. Gender Discrimination

6

Warf makes two separate claims of discrimination. The first, that she was denied promotion to GS-7; and the second, that she was denied promotion to the EPS position.

1. Promotion to GS-7

a. Equitable Tolling

As a prerequisite to filing suit under Title VII a federal employee must exhaust the administrative remedies outlined in the Equal Employment Opportunity Commission (EEOC) regulations. Hunter v. Sec. of U.S. Army, 565 F.3d 986, 993 (6th Cir. 2009). An aggrieved employee is required to seek counseling from an EEO counselor within 45 days of the discriminatory action or its effective date. 29 C.F.R. §1614.105(a)(1); Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991). Failure to seek such counseling in a timely manner will result in the dismissal of a claim. Hunter, 565 F.3d at 993; see also Dixon v. Gonzales, 481 F.3d 324 (6th Cir. 2007). Warf says that she was denied the promotion to the GS-7 grade beginning in 2004. The parties agree that she did not seek counseling until June 6, 2008. Therefore, Warf's claim is administratively barred unless the deadline for counseling was equitably tolled.

Five factors determine whether tolling the deadline for counseling is appropriate: (1) lack of notice of the counseling requirement; (2) lack of constructive knowledge of the counseling requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. Seay v. Tennessee Valley Auth., 339 F.3d 454, 469 (6th Cir. 2003).

Warf contends that she was diligent in pursuing her rights, so tolling should apply. Warf first sought promotion to a GS-7 after an HR audit of her responsibilities in

7

2004; she was unsuccessful. As noted above, she did not seek EEO counseling until June 6, 2008. To toll the reporting requirement, however, Warf must have been diligent in pursuing her administrative and legal rights. Almost five years elapsed from the time she was denied promotion until she sought EEO counseling. Warf has not demonstrated diligence in pursuing her administrative and legal rights. The claim for failure to promote to a GS-7 is administratively barred.

### b. Failure to Address GS-7 Gender Discrimination Claim

While Warf addresses tolling of the counseling deadline, she does not go on to make out a case of gender discrimination for the failure to promote to GS-7. Neither Warf's brief nor her exhibits attempt, beyond conclusory statements, to make a case of discrimination for failure to promote to GS-7. Warf's argument for discrimination with respect to the EPS position depends largely on the Court finding she was also discriminated against for promotion to GS-7. Her contention, as will be discussed below, is that she would have received the position if she could have applied as an inside candidate with a grade of GS-7.

### 2. Promotion to Education Program Specialist GS-9/11[3]

Aside from the failure to promote to GS-7, Warf says that she was not selected for the EPS position based on intentional sex discrimination and in retaliation for filling EEO complaints. In order to establish a prima facie case of gender discrimination based on failure to promote, Warf must show she belongs to a protected class, applied for and was qualified for the position, was considered and denied, and others not in the

---

[3] Warf learned of the hiring decision for the position on March 6, 2009 and sought EEO counseling on March 20, 2009 with the required 45-day period. VA does not contend this claim is barred.

protected class with similar qualifications received the position. <u>White v. Columbus Metro. Hous. Auth.</u>, 429 F.3d 232, 241-44 (6th Cir. 2005). The only factor in dispute is whether Delong, as the hired candidate, had similar qualifications to Warf.

### a. Ineligibility for Status as Internal Candidate

Warf advances a three part argument. She says that but for the previous discrimination, she would be a GS-7. As a GS-7, she says she could have applied as an internal candidate. Finally, she asserts had she applied as an internal candidate she would have been hired. The collective bargaining agreement between the employee union and the government, according to Warf, would have required that the position go to an internal hire and Delong, who was external, should have never been considered. Warf could not apply as an internal candidate because she was a GS-6 and could not apply for a position higher than GS-8.

The breach of a collective bargaining agreement by violation of hiring protocol is the subject of a union grievance, not a Title VII suit. Violation of the collective bargaining agreement does not create a cause of action under Title VII.

### b. Similar Qualifications

It is unclear how Warf would compare to other internal candidates; she does not advance evidence on the qualifications of other internal candidates, if any existed. It is also unclear if Warf actually argues that she was more qualified than Delong. However, because a successful claim of gender discrimination requires the Court to evaluate the candidates' respective qualifications, the Court will assume she makes such a comparison.

Warf claims that she was the most qualified because she had successfully performed the duties encompassed by the EPS position for several years.  Warf worked for the Hospital beginning in 1999 as an administrative assistant to Adams.  At the time of her application for the EPS position, she held an associate's degree.  The applicants interviewed by the committee all had a master's degree.  Delong holds a master's degree in education and had experience teaching education at the university level.  Warf and Delong did not have similar educational or professional qualifications.  A hiring determination based on education and professional credentials is not discriminatory. Sutherland v. Michigan Dep't of Treasury, 344 F.3d 603, 617 (6th Cir. 2003) (finding no pretext when hiring decision based on a more extensive educational background).

### c.  Pretext

VA offers a plausible non-discriminatory reason why Warf was not hired for the EPS position: there were candidates with more education and experience.  For Warf's claim to succeed, she must demonstrate that this reason is pre-textual. Manser v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 2008).  Pretext can be shown if the proffered explanation has no basis in fact, did not actually motivate the conduct, or was insufficient to warrant the challenged conduct.  Clay v. UPS, 501 F.3d 695, 703 (6th Cir. 2007).

Warf has not advanced evidence or any argument creating an issue of fact as to any of the reasons cited by the committee for hiring Delong.  Her argument depends on excluding Delong from the comparison.  Warf has not challenged Veterans proffered reason; as such, she has not met her burden on this claim. There is no fact in dispute that requires a trial.

B. Retaliation for Protected Activity

Warf also claims she did not receive the EPS position because of her previous EEO activity. Warf has not advanced any evidence that creates a question of fact as to whether the decision not to interview/hire her was retaliatory. She depends entirely on her conclusory statements. Four of the members of the committee reported they had no knowledge of her EEO activity. Further, the selection of Delong rather than Warf was based on his credentials and Warf has not argued otherwise.

C. Equal Pay Act Violation

Warf asserts that VA violated the Equal Pay Act when it paid her less than Delong for performing the same work. A successful Equal Pay Act Violation claim requires the plaintiff to demonstrate higher wages were paid to a male who performed equal work in equal working conditions. Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). At issue is whether Delong and Warf performed the same work under the same conditions.

The EPS was a new position at the Hospital. The scope and function of the position was to manage and implement professional development, training, and continuing education for the social workers, psychologists, medical students, interns and physicians on staff. The Hospital designed the EPS position to coordinate all of the continuing education in the Mental Health Department. While Warf makes conclusory statements about performing the same work, she offers no evidence to support her assertion.

Warf was an administrative assistant to Adams. Her role was to provide primary administrative support to Adams and the Mental Health Department. In addition, she

11

coordinated the Psychology Internship Program, the only apparent overlap between the two positions. Warf and Delong did not perform substantially similar work. Delong was tasked to provide post-graduate professional development for mental health professionals. Warf was member of the support staff responsible for administrative and ministerial work. Warf has not advanced evidence to show there is a triable issue of fact surrounding her Equal Pay Act violation claim.

### D. Hostile Work Environment

#### 1. The Law

Warf maintains that the male leadership at the Hospital engaged in sexual harassment by creating a hostile work environment. A hostile work environment exists where the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993). A hostile work environment violates Title VII. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986). To establish a claim for hostile work environment Warf must show she is a member of a protected class, she was subjected to unwelcome harassment, the harassment was based on her gender, the harassment affected a term, condition, or privilege of employment and VA knew or should have known of the conduct and failed to take preventative or corrective actions. Michael v. Caterpillar Fin. Services Corp., 496 F.3d 584, 600 (6th Cir. 2007). As a woman, Warf is a member of a protected class.

#### 2. Unpleasant v. Hostile

Warf must next demonstrate she felt sexually harassed and that a reasonable person in her position would have felt sexually harassed. Id. The subjective part of the test is not in dispute. However, Warf has not advanced sufficient evidence to support an objective finding of sexual harassment. Warf cites to specific examples of conduct to support her sexual harassment claim. *See supra* section II(C). These examples individually or collectively do not make out a case for hostile work environment.

The Sixth Circuit has considered the line between an unpleasant work environment and a hostile work environment many times. For example, in Black, *supra*, the Sixth Circuit refused to find an objectively hostile work environment where male co-workers made repeated references to breasts; referred to women as "broads;" the plaintiff was told by her boss that "she made great money for a woman;" and the plaintiff was subjected to sexual innuendo. The Black Court explained that this conduct was merely offensive and did not rise to the level of severe or pervasive. Id. at 826.

The Sixth Circuit further explored the limits of a hostile work environment claim in Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir. 2000). Bowman complained of being unjustly reprimanded by his boss, called at home, subjected to abusive language, sexual innuendo, touched on the buttocks, stripped of job duties, and a myriad of other petty slights. Id. at 458-60. The Sixth Circuit refused to find a hostile work environment. The panel explained there was a difference between harassment and discriminatory harassment. Id. at 464. Conceding that the plaintiff suffered intimidation, ridicule, and mistreatment, the panel explained that the conduct was not pervasive or severe enough to constitute a hostile work environment or sufficiently related to gender. Id.

13

The conduct Warf complains of is less severe and pervasive than the conduct at issue in Bowman and far less sexual in nature than the conduct in Black. Finally, Warf advances no evidence to support the incidents she cites were related to her gender. Fairly considered, none of the incidents were sexually based or lewd. In addition, Warf does not describe unwelcome sexual advances or exposure to pornography, name-calling, or profanity.

### 3.  Relationship to Gender

Warf urges the Court to consider the totality of the circumstances to determine that the conduct was pervasive and severe enough to constitute a hostile environment or at least raise a triable question of fact. Faragher, 534 U.S. at 786 (1998).  Conceding the truth of all the incidents Warf describes, there is still no evidence to suggest gender based harassment. Rather, the circumstance she describes appear to be ordinary workplace friction.

Finally, Warf urges the Court to consider harassment toward other women at the Hospital to support her claim. With exception to a passing reference to the other women who have filed claims of harassment, Warf's brief does not advance this theory, nor does the evidence she offers support it.  The only evidence of a pervasive environment of abuse is Warf's conclusory allegations.  This is not enough to raise an issue of fact for trial.

VI. Conclusion

Warf has not advanced evidence to show there is a genuine issue of material fact regarding her claims which requires a trial for resolution. Accordingly, Veterans Affairs' motion for summary judgment is **GRANTED.** The case is **DISMISSED**.

**SO ORDERED.**

Dated: November 3, 2011                s/Avern Cohn
                                       AVERN COHN
                                       UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Thursday, November 3, 2011, by electronic and/or ordinary mail.

                                       s/Julie Owens
                                       Case Manager, (313) 234-5160